**Ralph PFALZ, Plaintiff,**

v.

**Margaret HECKLER,\* Secretary of Health and Human Services, Defendant.**

**No. C–1–82–1373.**

United States District Court, S.D. Ohio, W.D.

June 30, 1984.

---

\* The only proper defendant in this action is the Secretary of Health and Human Services, Margaret Heckler. Fed.R.Civ.P. 25(d)(1). Accordingly, Margaret Heckler should be substituted as defendant Secretary in place of Richard S. Schweiker, and no further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Act, 42 U.S.C. § 405(g).

**654**

Thomas J. Geygan, Cincinnati, Ohio, for plaintiff.

Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, for defendant.

## OPINION AND ORDER

SPIEGEL, District Judge:

Plaintiff brought this action under 42 U.S.C. § 405(g) seeking review of the Secretary's decision that plaintiff is not disabled and denying him disability benefits. The parties have filed motions for summary judgment (docs. 4 and 5). The motions for summary judgment are hereby overruled because the case is here for general judicial review. Because we conclude that the Secretary's decision is not supported by substantial evidence, we remand to the Secretary with instructions to award benefits for the period beginning February 25, 1980.

Plaintiff applied for disability benefits April 7, 1981 alleging that he became disabled February 25, 1980. Plaintiff assert-ed that the residuals of a 1966 cerebral vascular accident had become increasingly severe, ultimately precluding his ability to engage in substantial gainful activity. The Social Security Administration (SSA) denied the application initially and on reconsideration. Plaintiff, his wife and his attorney appeared before an Administrative Law Judge (ALJ) who considered the case *de novo* and ruled on April 19, 1982 that plaintiff was not disabled. This decision became the final decision of the Secretary when the Appeals Council declined review October 25, 1982.

Plaintiff, who is now sixty-four years old, has an eleventh grade education. He worked primarily as a plumber until 1966 when he suffered his stroke (tr. 99–115). Following his stroke he participated in a rehabilitation program including a one-year training program in electronics (tr. 26). He worked for slightly more than a year as a core tester over ten years ago (tr. 26, 40, 73). Plaintiff ·testified that this was an unskilled job (tr. 26); his description of the work involved corroborates this description (tr. 26, 37–38). He testified that he has never used his electronics training and the training is now obsolete (tr. 36, 37). Plaintiff then returned to working as a plumber and for the next several years worked for a number of employers (tr. 33, 34, 36, 49). He stated that employers found him too slow and thus he would have to give up the job (tr. 24, 34, 36, 49). His most recent job was as a maintenance man doing repairs in an apartment building but he gave up this job in February 1980 when his employer told him he was too slow (tr. 24, 36).

Plaintiff alleges disability as a result of a combination of impairments including left hip and lower back pain (tr. 27–28), a weak left arm and reduced grip (tr. 29), poor peripheral vision (tr. 27), and severe equilibrium problems (tr. 28–29).

The medical records submitted by Dr. Kenneth Langlois, a psychiatrist and plaintiff's treating physician, corroborates these complaints (tr. 116, 127–28). Dr. Langlois stated that although he had made a remarkable recovery from his cerebral vascu-

lar accident, plaintiff probably could not return to full-time work. Dr. Langlois added that possibly plaintiff could do light work that permitted him to sit or stand as he preferred and involved no heavy or repetitious lifting of over fifty pounds (tr. 128).

Dr. Thomas Bender, a general surgeon who examined plaintiff at the request of the SSA in July 1981, corroborated the evidence as to the cerebral vascular accident. Based upon his examination of plaintiff he found little neurological involvement except for visual field loss in the right eye. Dr. Bender also reported that plaintiff suffered from low back pain and had degenerative hip changes consistent with his age (tr. 117–20).

At the hearing before the ALJ, plaintiff conceded that he had learned to live with his equilibrium problems, lack of left arm strength and pain, but in the last four or five years these problems had grown worse (tr. 29, 30–31). He nevertheless conceded that he could lift up to sixty pounds three to four times an hour (tr. 45).

After reviewing the evidence, the ALJ concluded that plaintiff was unable to return to his prior work as a plumber as that work involved heavy lifting. He concluded, however, that plaintiff retained the residual functional capacity for work as an electronics core tester or similar light work (tr. 12). He specifically did not credit plaintiff's testimony as to the severity of his impairments (tr. 12–13). Based on a residual functional capacity for light or sedentary work, plaintiff's age, educational background and prior work experience as a core tester, the ALJ found that plaintiff had failed to meet his burden of establishing that his impairments had prevented him from engaging in substantial activity for the requisite period. Therefore, the ALJ did not consider whether there were jobs in the national economy that plaintiff could do given his impairments.

■ This brief review of the medical records and of plaintiff's testimony demonstrates that there is substantial evidence for the ALJ's conclusion that plaintiff retains the residual functional capacity for light or sedentary work. However, we find that the ALJ erred in treating plaintiff's job as a core tester as prior relevant work.

Work done more than fifteen years prior to the date of the application for benefits is not considered relevant work experience nor is work that is done only sporadically for brief periods of time during that fifteen-year period relevant. 20 C.F.R. § 404.1565. It is true that plaintiff held the job as core tester for longer than a year and that it does fall within the fifteen-year period. Nevertheless, we believe it is a mistake to consider a one-year position held while recovering from the effects of a stroke as prior relevant work where a plaintiff has a twenty-six year working history as a plumber. *See* tr. 59, 23, 73. Although we note the factual distinction between this case and *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048 (6th Cir.1983), we find applicable the Court's statement that the burden shifts to the Secretary to prove that there are jobs in the national economy that plaintiff can perform once the claimant makes a prima facie case "by showing that he cannot perform his *usual work*". *Id.* at 1053 (emphasis added). Plaintiff's usual work was as a plumber. Because the ALJ concluded that plaintiff could not work as a plumber, the burden of going forward shifted to the Secretary.

Furthermore, the regulations state:

If you are severely impaired and of advanced age and you cannot do medium work, you may not be able to work unless you have skills that can be used in (transferred to) less demanding jobs which exist in significant numbers in the national economy. If you are close to retirement age (sixty—sixty-four) and have a severe impairment we will not consider you able to adjust to sedentary or light work unless you have skills which are highly marketable.

20 C.F.R. § 404.1563(d).

We read the regulation to mean that an individual of advanced age who cannot do medium work and who has no transferable

skills is by definition severely impaired, and has met his burden of proving that he cannot do prior relevant light or sedentary work. Ordinarily, the transferability of skills is not considered until after the plaintiff has demonstrated that he is unable to return to his prior work. However, if transferability is not considered in determining whether plaintiff has met his burden, it would be possible to consider that a plaintiff of advanced age who can do sedentary work has not met his burden of proof even though the medical-vocational guidelines would dictate a finding of disability for that individual. *See e.g.*, Rules 201.01–201.02 and 202.01–202.02, App. 2, Subpart P, S.S.Reg. No. 4.

■ Plaintiff was sixty-two at the time of the administrative hearing and thus of advanced age. Although the ALJ made no findings as to the severity of plaintiff's impairments, he consistently referred to plaintiff's ability to do light or sedentary—but not medium—work. Although the ALJ made no finding as to the transferability of plaintiff's skills, if any, it is apparent from plaintiff's description of his jobs, including that as a core tester, that plaintiff does not have any transferable skills. We conclude that plaintiff has met his burden of demonstrating that he is unable to do prior relevant work. The burden thus shifts to the Secretary to go forward with proof that there are jobs in the national economy that plaintiff can perform. *Noe v. Weinberger*, 512 F.2d 588 (6th Cir.1975).

■ The Secretary can satisfy her burden by using the medical-vocational guidelines commonly known as the grid. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir.1981). The Secretary may rely on the grid where the ALJ makes specific findings of fact with respect to the particular claimant's age, education, vocational factors and residual functional capacity. Section 200.00, App. 2, Subpart P, Reg. No. 4. The ALJ in this case found that plaintiff was of advanced age, had a limited education and had the residual functional capacity for either light or sedentary work. In that situation vocational factors

include the skill level of previous work experience and the existence of transferable skills. *See* Rules 201.01—.03, 202.01—.03, App. 2, Subpart P, Reg. No. 4. Although the ALJ made no findings as to the skill level or transferability, the record is such that we can make those findings.

Plaintiff testified and his description of his work as a core tester demonstrates that that job was unskilled (tr. 26, 37–38). His description of his work as a plumber indicates that he used machines and tools and that his job required technical knowledge or skills (tr. 75–77). We assume such work is semi-skilled. What is important, however, where the plaintiff is of advanced age is not whether the work is semi-skilled or skilled but whether the work imparted skills directly transferable to other sedentary work. *Richardson v. Secretary of Health and Human Services*, 735 F.2d 962 (6th Cir.1984).

■■ Rules 201.02 and 202.02 mandate a conclusion of disabled for an individual of advanced age and limited education limited to sedentary or light work even if his prior experience is semi-skilled if those skills are not transferable. Such a person in fact is presumed disabled unless he has a particularly transferable skill or a substantial vocational asset. *Id.* quoting *Blake v. Secretary*, 528 F.Supp. 881, 884 (E.D.Mich.1981); *see also Weaver v. Secretary*, 722 F.2d 310, 312 (6th Cir.1983). Furthermore, Section 201.00(f) states that to conclude that skills are transferable to skilled sedentary work where a plaintiff is of advanced age there must be "very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry." The ability to maintain a production standard or to use hand tools is not a transferable skill but rather an aptitude. A skill is a particular learned ability to do a specific job. *Weaver*, 722 F.2d at 311–12. There is no evidence that this plaintiff has the particular learned ability to do a specific job. Accordingly, the grid mandates a finding of disabled regardless of whether plaintiff has retained the capacity for sedentary or for

light work. Rules 201.01—.02, 202.01–.02, App. 2, Subpart P, S.S.Reg. No. 4.

We conclude, therefore, that plaintiff did meet his burden of proving that he was unable to return to his prior usual work and further, that the Secretary did not come forth with evidence of a specific job that plaintiff could do. Accordingly, the Secretary's conclusion that plaintiff is not disabled is not supported by substantial evidence and must be reversed. This matter is remanded to the Secretary for a calculation and award of past-due benefits.

SO ORDERED.