Charles W. WATERS, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,** Defendant.

File No. 2:92–cv–074.

United States District Court, W.D. Michigan, N.D.

Oct. 13, 1992.

James A. Rademacher, Green, Renner, Weisse, Rettig, Rademacher & Clark, Escanaba, MI, for plaintiff.

Michael L. Schipper, Asst. U.S. Atty. and John A. Smietanka, U.S. Atty., Grand Rapids, MI, for defendant.

*OPINION*

HILLMAN, Senior District Judge.

This action was filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of a final decision of the Secretary of Health and Human Services, denying plaintiff's claim for disability insurance benefits. The decision of the Secretary is now before the Court, pursuant to cross-motions for summary judgment. The Act, *supra,* limits this Court to a review of the Administrative Record and provides that if the Secretary's decision is supported by substantial evidence, it shall be conclusive. The only issue involved in this appeal is whether there is substantial evidence to support the Secretary's decision denying the claimant disability benefits and, specifically, whether there is substantial evidence supporting the Secretary's decision that the claimant is capable of performing sedentary work which exists in significant numbers.

■ Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Substantial evidence is more than a mere scintilla but less than a preponderance. *See Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), *Gibson v. Secretary of Health, Education and Welfare,* 678 F.2d 653 (6th Cir.1982). The Sixth Circuit has stated that "substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the 'substantiality of evidence must take into account whatever in the record fairly detracts from its weight.' " *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 387 (6th Cir.1978) quoting *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). I am not to review the record *de novo* and I must evaluate the record as a whole and uphold the Secretary's decision if it is supported by substantial evidence, even though I might reach a different result were I deciding the case *de novo. See Morgan v. Secretary of Health and Human Services,* 664 F.Supp. 273 (E.D.Mich.1986).

Plaintiff was born on June 6, 1939, possesses a high school education, and has relevant past work experience as a mine plant repairman, mine maintenance man, and pump repairman. Transcript of Administrative Proceedings at pages 2, 3, 4 and 5 (hereinafter Tr. at ——). On April 4, 1990, plaintiff applied for a period of disability and disability benefits, alleging that since June 21, 1989, he has been unable to work as a result of a bad back. Tr. at 60–62. The Secretary adopted the findings of the Administrative Law Judge (ALJ) who concluded that plaintiff was not capable of performing his past relevant work

but was capable of performing sedentary work.

The ALJ concluded that claimant suffered from degenerative arthritis of the lumbosacral spine and degenerative disc disease of the lumbosacral spine with possible spinal stenosis. Based on these impairments, the ALJ concluded that plaintiff was not capable of performing his prior work. According to the ALJ's decision, the plaintiff has the residual functional capacity for sedentary work. Relying on the testimony of the vocational expert, the ALJ concluded that plaintiff had transferable skills to semi-skilled sedentary work and that there were 1,000 jobs in existence in the claimant's regional economy that he could perform. Therefore, the ALJ concluded that plaintiff was not disabled. The defendant described the vocational expert's testimony as follows:

Bob B. Winborn, Ed.D, formerly a professor of rehabilitation counseling at Michigan State University, testified as a vocational expert (Tr. 54–58, 148–49). Mr. Waters' attorney did not object to Dr. Winborn's qualifications (Tr. 54). Dr. Winborn examined the exhibits in the record and heard Mr. Waters' testify (Tr. 54–55). Dr. Winborn testified that as a machinery repairman, Mr. Waters [sic] acquired skills of using micrometers and gauges, and reading blueprints (Tr. 56). These skills transferred to the semi-skilled, sedentary, position of bench inspector (id.). There were 1,000 bench inspector positions in the state of Michigan that required Mr. Waters' skills (id.). These jobs were concentrated in the lower peninsula, in the aerospace and automotive industries (Tr. 57–58). While the positions required Mr. Waters [sic] skills using micrometers and gauges and reading blueprints, the products and processes were different from those in the mining industry (id.). Mr. Waters also had skills that transferred to 3,500 exertionally light positions (Tr. 56). These included skills from his work as a warehouseman that transferred to tool crib attendant, welding skills that transferred to welding work, and machinery repair skills that transferred to small engine repair (Tr. 55–56).

Defendant's Memorandum in Support of Motion for Summary Judgment at page 4.

It cannot be seriously disputed that the vast majority of these 1,000 jobs exist in the greater Detroit area where the automotive industry is centered in Michigan. This puts the vast majority of these jobs some 500 miles away from plaintiff's residence. As indicated by the defendant, these 1,000 jobs involve products and processes which were different from those in the mining industry which plaintiff has performed in the past. As the defendant points out at page 10 of its brief, if the plaintiff were 55 or older, instead of 53, he would likely be found disabled based on the grids because of the difference in products and processes between his prior work experience and the 1,000 jobs. See also Rules 201.15, 201.07, and 201.00(f) of 20 C.F.R. Part 404, Subpart P, Appendix 2.

■ Once the Secretary concluded that plaintiff was not capable of performing his past relevant work, the burden shifted to the Secretary to prove that, notwithstanding plaintiff's severe impairments, he has the ability to perform substantial gainful employment which exists in the national economy. See Price v. Heckler, 767 F.2d 281 (6th Cir. 1985); Richardson v. Secretary of Health and Human Services, 735 F.2d 962 (6th Cir. 1984). The specific issue facing the court is whether there is substantial evidence to support the Secretary's finding that plaintiff is capable of performing substantial gainful activity which exists in the national economy. 20 C.F.R. § 404.1566 defines work which exists in the national economy as follows:

We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.... Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist in only very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in national economy." We will not deny you disability benefits on

the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

*Id.*

■ The record before the court provides no evidence of work which exists in the national economy in regions other than the state of Michigan. The record does establish that there were 1,000 jobs within the entire state of Michigan which the Secretary concluded the plaintiff was capable of performing. Thus, the court is faced with the question of whether the Secretary's finding that there were jobs in "significant number" which the plaintiff could perform, is supported by substantial evidence. In *Hall v. Bowen,* 837 F.2d 272 (6th Cir.1988) the court faced this question. The court explained:

> We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of jobs. The figure that the ALJ here found is *not* that magic number; the 1350 figure is to be viewed in the context of this case only. A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

*Id.* at 275.

In *Hall v. Bowen, supra,* the court found that 1,350 jobs which existed in the nine-county Dayton, Ohio, area where plaintiff lived established a "significant number." In *Born v. Secretary of Health and Human Services,* 923 F.2d 1168 (6th Cir.1990), the court was faced with a situation where there were 125,000 positions state-wide and 2,500 positions in the local region where plaintiff lived. The court concluded that the 2,500 full time assembly positions was a significant number of jobs in plaintiff's local region. In *Vick v. Secretary of Health and Human Services,* 1992 WL 92833, 1992 U.S.App. LEXIS 10811, the court found that 1,100 jobs which existed within 150 miles of the plaintiff's residence met the "significant number" requirement. In *Mitchell v. Secretary of Health and Human Services,* 1990 WL 55669, 1990 U.S.App. LEXIS 6948, the court found that 22,256 jobs which existed in the national economy was a "significant number." In *Pollice v. Secretary of Health and Human Services,* 1988 WL 28536, 1988 U.S.App. LEXIS 4083, the court found that defining a region to be the entire state of Michigan was not error and concluded that 3,600 jobs met the "significant numbers" test.

A decision of the Honorable Wendell A. Miles of this court most closely resembles the facts of this case. In *Brown v. Secretary of Health and Human Services,* 1989 U.S.Dist. LEXIS 17892 (W.D.Mich.1989), a copy of which is attached,* the court found that 3,000 jobs scattered throughout the state of Michigan was not a "significant number." The court felt that it was important that most of the jobs were in southeast Michigan, the greater Detroit area, while plaintiff resided in the Muskegon area. In the instant case, the record does not establish that there is a single job which plaintiff can perform in the Upper Peninsula of Michigan. Thus, plaintiff must travel at least 180 miles to reach the Lower Peninsula and then must travel a considerable distance beyond that before he can even locate an area where jobs he is qualified to perform exist.

The ALJ's decision finds that plaintiff is only capable of sedentary work, the most restricted level of work that the Secretary can conclude an individual is capable of performing. Plaintiff is closely approaching advanced age and the Secretary recognized the difference in the product and processes between plaintiff's prior employment and the 1,000 jobs which plaintiff is allegedly capable

* Editor's Note: Attached decision deleted for publication purposes.

of performing. Considering plaintiff's inability to travel more than two or three hours in a car, the isolated nature of the jobs, and the type and availability of the work, the court concludes that common sense dictates that there is not substantial evidence supporting the Secretary's finding that jobs exist in significant numbers which plaintiff can perform.

Accordingly, plaintiff's Motion For Summary Judgment will be granted, defendant's Motion For Summary Judgment will be denied, and the case will be remanded to the Secretary for a calculation of benefits.